The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon, counsel. This case is case number 4-23-0282, Blessing Hospital v. Illinois Health Facilities & Services Review Board, et al. At this point, I'd like to have counsel identify themselves for the record. First, for the appellant. Good afternoon, Your Honor. Neil Lloyd, I'm counsel for Blessing Hospital, the appellant. Dan William Davis, co-counsel for the appellant. All right, thank you. And for the appellees? I'm Chaya Citrin, Assistant Attorney General representing the Illinois Health Facilities and Services Review Board and the other state defendants appellees. Good afternoon, Rebecca Lindstrom on behalf of the QMG appellees and QMG Hospital appellee. All right, thank you, counsel. Mr. Lloyd, you may proceed with your argument. Thank you, Your Honor. May it please the court. The trial court dismissed our case on the ground that Blessing was late in issuing summons, when in fact the record is clear that the clock never even started. The Health Facilities Planning Board, which has sole control over when challenges to its decisions must be brought, never took the step that would have started the clock by serving its decision in the manner that the statute requires, that is, personal service or by mail. Nonetheless, it argues that its decision can't be reviewed because we petitioned too late. That position has nothing to commend it. It would block review on the merits of a decision that if upheld, will upend the principal health care provider in its rural area. Three indisputable points require reversal. First, the 35-day clock does not run until the board serves its decision by mail or personally. Two, the board did not serve its decision by mail or personally. Three, the clock accordingly never started and Blessing was not late. The court therefore should reach the merits consistent with Illinois' strong public policy favoring termination on the merits. Mr. Lloyd, may I ask? Yes, Your Honor. If the clock hasn't run, does that leave open a very long window for suit to be brought potentially after the applicant has begun to act on the approval? A year down the road, two years, five years? If the clock hasn't started to run, isn't that all still fair game? Well, two points to that, Your Honor. The first is, as we've made clear in our reply brief, any prejudice that would ensue from the clock not having started to run, that is, for example, QMG building its facility, would in fact have the opposite effect. It would moot our appeal because our appeal is seeking a challenge to the issuance of the certificate of need. So that's the first thing. The second thing order for the clock to start. And this is not something that is in the control of Blessing. So I agree with Your Honor. I think it would be unusual to take that long for the clock to start. But the Facilities Planning Board is fully aware of the law. The General Assembly has made it extremely clear here. It says personal service or by mail. Is there any issue, and I know it's not personal jurisdiction, but isn't it sort of a poor fit to have you argue that another party was not served technically in accordance with the law? Well, I hear what you're saying, Your Honor. I think that I have two responses. The first is that jurisdictional rules should be clear and they should be easy to apply. We've made that point. We've cited authority from the Illinois courts, from the federal courts about that. I think that's not a controversial position. The second thing is this jurisdictional rule is very easy to apply. The board, in fact, published on its website that it had given notice to QMG, right? The letter it had given notice to QMG. I don't think it's actually burdensome at all or a poor fit because we are unquestionably, Blessing is unquestionably an interested party entitled to challenge the facilities planning board's decision, okay? So there's no question about our standing. Obviously, you could look at that if you wanted to, but I don't think there's any question here on this record that we have standing to challenge this. So then the second question is, when does that challenge need to be brought? And the second paragraph of section 3103 is clear. It says a decision shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the U.S. mail. And all that the facilities planning board needed to do to start the stopwatch was to do that. And then to your point about fit, there needed to be some sort of mechanism to make sure that all of the other interested parties who were not the applicant could know about the decision. But in this case, I think that was very clear. All they needed to do serve it in the proper way. And so you can assert that QMG wasn't properly served, even if QMG has no problem with the way it was notified. That's correct, Your Honor, because the way that QMG was notified is the way that the legislature has said you determine whether the clock has started or it hasn't started. I mean, as an where a party gets a decision that is appealable, it seems like it's a final decision in the case, right? Summary judgment, motion to dismiss. But they misdocket the case. And so they file the notice of appeal. The appellant files a notice of appeal a couple of days late. And then they file a motion saying, please excuse this. We've got excusable neglect. We were late. We misdocumented it. The trial court says you should have a better docketing system. It's denied. They appeal that. And as everybody's going through and looking at the record on appeal, it turns out that there was a sanctions motion that was unresolved, that no one noticed that had been unresolved. There was no 304A finding. In that case, the notice of appeal was not late because the timing, in fact, the appeal should be held, go back, resolve the sanctions motion, right? This is no different than that. Are you asking for an interpretation of the rules that is essentially getting you guys off the hook for not getting the summons timely issued when you clearly knew about it by the end of May and then whatever time it took you to prepare the complaint? It seems as though what went down with the clerk's office really started with your requesting a date certain summons, which wasn't the right type of summons. Well, I have, again, two responses to your honor. The can't be waived. It can't be established by agreement of the parties. It's not subject to estoppel. This is a jurisdictional fact. It's a jurisdictional fact. And so we're not asking to be let off the hook based on something that happened later. It is absolutely true that we file a complaint for administrative review. But if that complaint was not due, then the clock has not started. And everything else that happened afterwards is not letting us off the hook. It's actually something that has no consequence at this time. We need to have a clear jurisdictional rule. This would have been very, very easy, very easy for the state, which brought the 2619 motion to dismiss. And in fact, this point was raised during the argument. If you look to QMG's appendix at a 269 to 71, they mentioned the green card, the card that we all know from way back on a certified mail. There's nothing in this record. And the reason there's nothing in this record is that the facilities planning board never started the clock. They served only electronically. And so that's why I think your honor, I agree there's a separate issue in terms of the proper interpretation of the court made rule about the equitable exception on summons. But the threshold issue for this court is did the clock ever start running? And we submit that the law is clear on when it starts and the facts are clear that it didn't. So in your pleadings before the trial court, you really didn't articulate that theory. You were looking for that equitable exception. Absolutely right. At the stage it was raised, it was raised at, you know, in part at the hearing, as I just mentioned and gave your honor that site, it was developed more fully in the reconsideration motion. But because it's a fact of jurisdictional consequence, it can be raised at any time. And that's why we're saying that the fact that blessing proceeded in response to the motion to dismiss on the assumption that the clock had started when it had not started, can't start the clock any more than in my example, the person who, you know, fell on the mercy of the court about their docketing system. And it turns out the circuit court was unimpressed with their docketing system. That doesn't matter. If there was still a pending sanctions motion, there wasn't a final judgment that was appealable. And that's not based on, you know, they could have said, look, we made a mistake in our docket system. We had bad docket software. The court's still going to say, you know, and there's lots of cases out there about that, as I'm sure your honor is aware, that the clock just never started. And so if the clock doesn't start, then we're not late. And, and, and that's the, and, and I, so I agree it's postured to your honor, and it was postured to the trial court in a somewhat unusual circumstance, because typically you would raise a jurisdictional issue earlier, but it's not late to raise the jurisdictional issue when it was raised. In this instance, therefore the court should reach the merits consistent with the strong public policy in Illinois that favors a determination on the merits. The board's decision presents an existential threat to Blessing Hospital's existence. But again, rather than defend the substance of the decision. Can we, can we agree that whether it's existential or trivial doesn't change the issue? I mean, the strength of your case, the weakness of your case, this is a jurisdictional question. We don't have to consider the importance or significance of the case. That, that shouldn't really be part of our consideration. Well, I, I agree with your honor to the extent that you and I agree that this is a jurisdictional question. This, but what the state and QMG are arguing is this is really a question about statutory interpretation and forfeiture. And so when, if, if your honor goes down that road and is taking up their forfeiture issue, then the question is the decision on the merits. And I think that would come into play. If we're talking straight jurisdiction, I completely agree. It's, it's got to be black and white. The clock starts or it doesn't. Just a scene off. I think I may have spoken over you. I mean, just, I was listening intently and I'm sorry, the screen captured that very well. For these reasons, then the clock did not start. The clock raises an issue of jurisdictional fact. All parties before the court have, have put forward the same record evidence. There is no evidence that there was proper service to start the clock. So we would urge the court to reverse unless there are further questions. I will wait to visit with you during rebuttal. Yes, I do have a question in that regard. So if we determine that the clock didn't start, what is specifically the relief that you're requesting? We're requesting that the court petition for administrative review on the merits. Okay. Thank you. For the appellees, who wishes to proceed first? Your Honor, I do on behalf of the QMG appellees, if agreeable to the court. All right. Thank you, Ms. Lindstrom. You may proceed. Thank you. May it please the court counsel, Rebecca Lindstrom, again, on behalf of the QMG appellees. While Blessing tries to complicate the issues here, it's simple. This case is about Blessing's failure to take required action within the required statutory period, which resulted in the delay in the administration of this matter and created uncertainty in the finality of the board's decision. When did the period begin to run? Your Honor, May 4th, 2022, which is the date of the agency decision and presumed to be the mailing date. Where is there authority saying that's decision, Your Honor, which is cited in our brief? It's a 1978 decision in its fourth district. Your Honor, Blessing's failure to take... Yes, Your Honor. What does that case say? That case states, Your Honor, that the date of mailing, and here, because there wasn't a proof of mailing requirement, in that case, it's referencing, which also isn't in the administrative review law provision, that the date on the agency decision was presumed to be the mailing date. So, created a prima facie evidence of mailing. Thank you. Your Honor, this case is about Blessing's failure, then again, to take required action within the required statutory period, and it resulted in uncertainty in the finality of the board's decision that approved by a vote of seven to one the QMG Appellee Certificate of Need permit application to establish a competing hospital after an already lengthy and rigorous CON process. And these delays and this uncertainty are precisely what mandatory service requirements of the administrative review law or the ARL were designed to protect against. And this appeal boils down to two things. One, summonses were not timely issued as Blessing itself conceded in response to the motion to dismiss, and I'm quoting Blessing here, quote, summonses did not issue within the required 35-day period, end quote. And because the action is barred, if summonses do not timely issue, the only way Blessing can proceed with its challenge is if it can demonstrate that the good faith exception to dismissal applied. But, and it brings me to my second point, Blessing did not make a good faith effort to cause summonses to timely issue. And it concedes this on appeal as it states it's not challenging the trial court's finding that it was not diligent in causing summonses to issue. And this ends the inquiry because absent a good faith effort or diligent effort to cause summonses to timely issue within the 35-day period, the action is barred. So the trial court- I think you're right that in, and I think it's been conceded here that in their response to the motion to dismiss, plaintiff did not attempt to invoke this argument that the period had not run. And they said to the contrary. However, at the argument, they did interject that argument and they specifically said they were trying to interject it to preserve it for appeal. Is there any authority that would say that somehow it's too late to raise it at the argument date? Yes, Your Honor. A few things to that. First, Your Honor, if you look to the comment that you were making about what the appellant said during the argument on the when service was accomplished, they were still talking about, Your Honor, that they felt they were entitled to service as a party. They were raising an issue with not being provided service of the permit letter. So I feel they did not sufficiently raise that, Your Honor, below in that motion, or excuse me, at the hearing. But there's also case law, Your Honor, that provides that you need to sufficiently raise your issue in response to a motion to dismiss, especially a 2619. If it's subject matter jurisdiction, doesn't that mean that it cannot be waived? Subject matter jurisdiction, yes, Your Honor, cannot be waived. But the arguments on subject matter jurisdiction here, the CUMG appellees put forward, it's a red hearing. The plaintiff timely filed the complaint and it invoked the court subject matter jurisdiction. And again, importantly, it conceded the summonses were untimely issued. And I feel when you look to the cases that the appellant cites in support of its jurisdictional argument, those cases involved plaintiffs who had not, excuse me, the complaint had not been timely filed according to the agency. And so the agency was challenging the subject matter jurisdiction. There was no challenge before the trial court as to the subject matter jurisdiction of the court. And the timely filing of a complaint, that's a jurisdictional piece, but the summonses being timely issued, that's a mandatory requirement. And so the CUMG appellees put forward that this jurisdiction argument is a red hearing and it's simply Blessing's attempt to get around the fact that a jurisdictional argument can't be waived. Normal arguments can be waived. What about this thing that's in the middle, this mandatory requirement? Can it be waived? Your Honor, I'm not sure I understand what you mean by- Sure. We know that the requirement of issuance of summons is not, quote, jurisdiction. It is mandatory and it's in a different place than other issues in a case. It's mandatory. If it's mandatory, can an argument be waived on that issue? No, Your Honor. I don't believe- What authority can you give me for that? I believe it's cited in our brief, Your Honor, that the challenge to this timely issuance of summonses cannot be waived. Let me see if I can pull that. Let me see. What I'm getting at is the argument that they're making in support of jurisdiction, you want me to say that's waived because it wasn't adequately raised below. Your Honor, I would say their argument that summonses were untimely, their new argument was waived, not the jurisdiction issue. And again, I think if you even look, though, Your Honor, to the trial court's denial of their motion to reconsider, while they argued, or while the court concluded that it was late-tendered, the court even said, even considering that argument, I don't feel that it warrants reconsideration for several reasons. One, to what Your Honor put forward in terms of blessings, challenges, service of a permit letter that was only entitled to be served to QMG. Right, right. But how does blessing know when the clock starts when we know the law says it's based on service on someone else? And they have no way to know. And the department has all the power to put that proof up when it posts the order. A few responses to that, Your Honor. First, the agency decision here, that permit letter, was dated. It was dated May 4th, and the law presumes that mailing date to be that. And blessing is entitled to fair and adequate notice of the decision of the agency. And they absolutely received that here, Your Honor. They were present at the board meeting when the project was approved. They admitted in their opening brief that it was, quote, undisputed that the permit letter was posted to the board's public website on the date that it was issued, which they noted was May 4th. And they absolutely, they received it timely because they attached it to their permit letter, which again, or excuse me, to their complaint, which again was timely filed with the court. So they had notice, they had adequate notice, and they timely filed their complaint. They just failed to comply with the mandatory summonses requirement and did not take any action. And that's why the good faith exception to dismissal did not apply. Because you were the moving party below on a 2619, wasn't it incumbent on you to identify to the court the date of service that started the period run? Your Honor, I believe that the appellees met, that we met our burden on the 2619 motion. The complaint was in the record, and it stated that because it was filed less than 35 days from the date of issuance of the permit letter, which it noted was May 4th, that it was timely commenced and timely filed. And also the permit letter was already in the record. It was attached to the plaintiff's timely filed complaint. And again- You're talking about what the plaintiff said. What evidence did you put in support of your motion into the record that would say, this is when Quincy was served? Our affirmative statements, Your Honor, that May 4th was the clock starting in our motion to dismiss, we noted that the clock started to run on May 4th, 2022, when the permit letter was issued. And in response, Your Honor, Blessing conceded. They conceded that the clock started to run, that there was a delay, and that there was an untimely issuance of summonses. And they repeated that concession throughout their response brief. Your Honor, and I see that my time is almost up. So I will just make one last quick point. If this court is considering remand, I believe it would be respectfully inappropriate because it would severely prejudice and be manifestly unfair to the QMG appellees who were not the party tasked with serving the agency decision, the only party entitled to service of the permit letter, and they have not objected to service. So for those reasons, and those set forth in our brief, I would respectfully ask that the decisions of the trial court be affirmed. Thank you. All right. Thank you, Ms. Lindstrom. Ms. Citrin, you may proceed with your argument. Thank you, Your Honor. May it please the court, I, Citrin, on behalf of the state defendants appellees, this appeal involves two issues. First, the circuit court's failure to issue timely summons. And second, the court's proper exercise of discretion in denying the reconsideration of the dismissal order. I'm going to briefly address the dismissal first, if that's all right, and then the denial of reconsideration. The circuit court did not err in granting the motion to dismiss for failure to issue timely summons. The board met its initial burden on its motion by noting the date on the decision, on its administrative decision. And Blessing, as Ms. Lindstrom noted, admitted in response to our motion that summons were not issued within the required 35-day period. And instead, Blessing argued that the good faith effort exception to the timely summons requirement applied. Given Blessing's concessions, there was no need for the circuit court to demand any further evidence of the date of service of the administrative decision. As far as I can tell, counsel for Blessing is not challenging the circuit court's argument that the good faith effort exception applies. So I'm not going to address that unless the court has any questions about the circuit court's decision on that particular issue. I do not, but I do want to start with a question. Isn't it really the board that had control over the issuance of a decision that contained a date of mailing? Isn't that what's supposed to it states the date that it was served? It's May 4th. No, it says the date it was issued. It doesn't say anything about it being served according to the requirement of service, correct? Right. So it says a date of decision, and I think that satisfied the initial burden to show that that's when the decision was served. And in response, Blessing could have argued, oh, no, that's not the date of service. That's just date of decision. But instead, they conceded that their summons were not timely issued. So the issue really is that in response to that argument, the circuit court had no reason to expect any further evidence. But you're a moving party below. Is that right? Correct. Okay. Isn't it incumbent on you as the 2619 move-on to supply the evidentiary basis to support your motion? And if you're saying the period expired, I think part of that would be to establish when the period started. So why would I be looking to the plaintiff to establish what you, I think, are required to establish? Right. So the court did have the initial burden to show when the period began, and it satisfied that burden by noting the date of decision, which created that initial presumption that that was the service as well. And for that reason, once Blessing responded that, in fact, the summons were not timely, the circuit court did not err in granting the motion to dismiss. Had Blessing wanted to raise another argument, which it raised later, that, in fact, the decision had not been properly served, that they could have raised that argument in response to the motion to dismiss, and they chose not to. Why they chose not to, we don't know. They've never provided any explanation for that, which really brings me to the next question, which is, did the circuit court abuse its discretion in denying the motion to reconsider? And it did not. As I said, there was no reasonable explanation provided for why Blessing never raised the question of whether the decision was properly served. And for that reason, it was not an abuse of discretion to deny reconsideration. And, in fact, it would have been an abuse of discretion to grant reconsideration based on a argument raised after the motion to dismiss. Can I ask you about the inference of mailing? Sure. The document doesn't say anything about mailing. It says it was emailed, which I know it's 2024, but that isn't a prescribed manner of service under the act, is it? So that question has not been answered in this case, that legal question of what is the required form of service. And if this court believes that the question of proper service has not been forfeited, which I'm going to argue has been forfeited, then the proper thing to do would be for this court to remand for further proceedings to determine, A, what type of service is required in these circumstances, and B, what type of service actually occurred in this case. You had a chance to do that, right? You could have supported your motion with actual evidence about mailing, if it was mailed. You wouldn't argue to me that I should presume it was mailed if you know it wasn't mailed, right? As far as I know, it was not mailed. Was it mailed? Possibly. I just don't know because the record doesn't reflect if it was mailed. And, yes, we could. What would the remand look like? The remand would be for the circuit court to consider the legal question of what type of service is required. And that's because under the Illinois Administrative Procedure Act, Sections 1050 and 1075, arguably, email service was sufficient. And then the second question... What would the stage of proceedings be for that remand? The proceedings would go back to the motion to dismiss stage, I guess, to determine legally what type of service was required. And then there would have to be fact-finding also. I mean, if the court were to find that but if the circuit court were to determine that personal service or mail was required, then there would have to be fact-finding about whether, in fact, personal service or mail service occurred. It would go back to as if the 2619 motion had just been filed? I guess it would be... I'm not certain because perhaps it would go back on the motion to dismiss. I'm not sure if it would make a difference if it would go back on either one. I'm not sure, Your Honor. But in any case, the court did not... Why would we send it back for the trial court to answer what's a question of statutory interpretation? So the question of statutory interpretation... The statute says it's deemed to have been served when either a copy is either personally delivered or when a copy is deposited in the U.S. mail, sealed envelope or package with postage prepaid addressed to the party affected by the decision. I think it's a question of whether the facts in the record show that that's here. And it would be the moving party's obligation to have the record speak to that. So, Your Honor, the statute provides an exception if the statute that applies to the agency allows for a different type of service. And the Illinois Administrative Procedure Act applies to the board and that act allows for email service. So the question would be... If it was consented to between the parties. I don't believe it requires consent. I would have to double check whether it requires consent, but in this case, there was consent by QMG. Right. Why wouldn't the record already contain that? That's what I don't understand. We're all acting without any knowledge about service and your whole argument starts with service. Your Honor, I appreciate your point that the record is very limited on the type of service that occurred. What we do know is that it was certainly served by email. Whether it was served by any other type of service is unclear from this record. And that's really because the burden... Our initial burden was to show service. We showed the date of service and then blessing conceded that the summons were untimely. And then when it raised the motion to reconsider, it was too late to put in evidence of how this was served. So had it raised the issue back in response to the motion to dismiss, then the record would have become more developed. If possible, I'd like to briefly address the question of whether counsel raised the service question at the motion to dismiss hearing. I don't believe that they did, that counsel raised the issue. All that counsel did was assert that he didn't know whether the decision had been mailed or if email service alone was sufficient. And he did not assert that service was improper, let alone develop any argument on that point. And so to argue that it was preserved is incorrect. And also I'd like to address this question about an exception to forfeiture for a that the summons be issued on time. It's not a jurisdictional problem. So there is no jurisdictional defect here. And also blessing is not arguing that the circuit court lacked jurisdiction. And the exception to forfeiture for arguing jurisdictional defects applies where a party is arguing that the circuit court lacks jurisdiction. But here they're arguing that the circuit court has jurisdiction and they're just trying to seek reversal of a dismissal. So the exception to forfeiture for jurisdictional defects is plainly irrelevant in this case. If the court has no further arguments, then we respectfully request that this court affirm the circuit court's judgment. Thank you. Thank you, Ms. Citram. Mr. Lloyd, rebuttal argument? Thank you, Justice Harris. So I'd like to start with Justice Doherty's question. And what evidence did they put in that the statute started? Zero. Zero evidence. Zero evidence. We cited the Abbott case, which is a chestnut, I'll admit, but it states a very well-settled principle that you can't confer jurisdiction by waiver and agreement. I heard multiple times. They pointed out that the question currently is not jurisdiction, right? We know that what we're talking about is this middle ground mandatory requirement. Well, I understand the middle ground mandatory requirement, Justice Doherty, but I respectfully do disagree because we need to know when the clock started. And right now, so they made three arguments about the clock starting, okay? They said, look at the date of the letter. They cited the Summers case in which there was actually an agreement that there was a mailing, okay? And then they said that we conceded that this was the date, okay? So let me start with the last point. We did not concede that this was the date. We did act as though this was the date, but that concession is legally ineffective under the Abbott decision. It's legally ineffective. They're the ones who control when the clock starts and what the document says. Let's assume that you look actually to the separate question, Your Honor, about a presumption of mailing. As I say, I think in the Summers case, everybody agreed it was just a question. Everybody agreed it was mailed. The question was when it was mailed, okay? Here, the document from the health facilities planning board states at the top of it, it was served electronically. So it says the only evidence in the record, the only evidence in this record is that the clock never started. And if the clock never started, then it's true, we could have invoked jurisdiction. But to say then that invoking jurisdiction means that now we're, we've, invoking jurisdiction is not the reverse and remand. Nothing would prevent the defendants from renewing their motion supported by more information about mailing or by filing a motion for summary judgment on the issue of mailing. Do you agree with that? I think that they could not support their motion to dismiss because I think that that was their initial burden. I think we could litigate the merits and they could try to move for summary judgment to support mailing. But I'll submit to Your Honor, given the stakes here, given what we're fighting, given what they're fighting, if there was any evidence of mailing, we would have seen it. There's no evidence of mailing because they didn't mail it. And I agree with Your Honor's point that this is a pure question of statutory interpretation. So I respectfully disagree with my colleague, the Citrin, that you would need to remand this to the trial court to figure out what the statute says. The statute's clear. They just didn't comply with the statute. And again, this notion that we somehow conceded, I go back, I didn't hear any response to my hypothetical, which was very clear and well-established, and it's well-established in Illinois law, Your Honor. If we would be in exactly the same position, if we had a complaint that was dismissed, the notice of appeal was filed, quote unquote, a day late, the trial court said you didn't act with enough diligence. And when it got on appeal, it turned out that there was an unresolved sanctions motion. They would be making exactly the same argument to you. They would say, you thought that the clock started to run. You thought that you were late. You asked for an excuse. But what we did doesn't matter when it's a matter of jurisdictional significance. That's the difference. That's what you indicated in your opening argument in terms of remand. I believe this is what you indicated, that the stage at which this would go back would be pre-service, that this would have to go back for adequate service. Is that right? Well, what I was suggesting, Your Honor, is that if there was a debate, Your Honor, about the adequacy of the nature of the summons, I think that that would have to be litigated. But if the clock hasn't started yet, and we go back, the state serves QMG properly, then there's 35 days to effectuate a proper issuance of the summons at that time. My sense is, given that they have noticed that there was a summons issued, and the question that they're saying, if the clock started, was, should we be excused for it being untimely? That's where I think I pivot back to what Justice Doherty said. And I think that nothing would prevent them, if they had the evidence, from raising a timeliness issue on summary judgment. But I think that it would be time for them to address the merits, and for us to litigate going forward. I thank the court for its consideration. Okay. Thank you, Mr. Lloyd. Thank you all. Very good arguments. The court will take this matter under advisement, and we'll issue a written decision.